Eneas, the American proprietor, any attempt to evade the blockade at Topsail Inlet would be illegal, and would subject her to condemnation. There is a palpable reserve in the log and in the statements of the witnesses examined in preparatorio, which, connected with the circumstances surrounding the voyage, affords probable cause for the belief that the vessel was engaged in an illicit adventure, and this is so strongly made out that I shall suspend a final decision in the case, with leave to the libellants to put in further proofs as to the point or place at which the capture was made, and also as to the purpose of the voyage, at any time within one year after the entry of the decree on this decision.

[The libellants having presented further evidence in pursuance of the order of the court, a decree of condemnation was pronounced against the schooner. Case No. 8,294.]

---

## Case No. 8,294.

### The LEVI ROWE.

[Blatchf. Pr. Cas. 373; 20 Leg. Int. 229.] [1]

District Court, S. D. New York. June 29, 1863.

##### PRIZE—VIOLATION OF BLOCKADE.

On further proofs, vessel and cargo condemned for an attempt to violate the blockade.

In admiralty.

BETTS, District Judge. This suit was brought to hearing in January term last [Case No. 8,293] upon the preparatory proofs theretofore taken therein, and on the ship's papers and the documents captured with her at the time of her seizure as prize, no claimant having intervened in her defence. It was then considered by the court that the evidence presented against the prize, on the part of the libellants, was inadequate in law to authorize the condemnation prayed for. The court, being thereupon moved by them, made an order that they have one year from that time within which further evidence might be presented by them to the court "as to the point or place of the capture, and also as to the purpose of the voyage, and such other or further proof as they may be able to produce." The libellants, in pursuance of said order, took, before one of the prize commissioners of this court, on the 10th day of June instant, the deposition of Samuel B. Hoppin, an assistant surgeon in the United States navy. He testifies that he was on board of the United States gunboat Mount Vernon, being attached to her, about the 29th of November, 1862, and witnessed, at that time, the capture of the above prize by said gunboat; that the capture was made off New Topsail inlet, off the coast of North Carolina; that, when taken, the prize was heading or running directly into Old Top-

sail inlet, which then bore west about four miles; that New Topsail inlet, at the time of boarding and seizing the schooner, bore northwest by north, from three to three and one-half miles; that the prize was, when discovered, heading, with a fair wind, directly into New Topsail inlet; that, as soon as she saw the Mount Vernon, she went about, and headed out from the shore; and that, after the capture, he had several conversations with the supercargo of the vessel, captured in her, who told him that he was aware of the blockade, and had run the blockade of Charleston and Wilmington several times, and that the schooner intended to run the blockade into Wilmington. The further proofs so furnished in the case show conclusively the illicit character of the voyage upon which the schooner was engaged at the time of her capture. A decree of condemnation and forfeiture must, accordingly, be entered against the vessel and her cargo.

---

LEVITT (UNITED STATES v.). See Case No. 15,594.

---

## Case No. 8,295.

### In re LEVY et al.

[1 Ben. 454; [1] 1 N. B. R. 107; Bankr. Reg. Supp. 24; 6 Int. Rev. Rec. 134.]

District Court, S. D. New York. Oct. 3, 1867.

##### EXAMINATION OF WITNESSES IN BANKRUPTCY—NOTICE.

1. No notice need be given to the bankrupt of the examination of a witness called by the assignee in bankruptcy.

2. Such examination may be proceeded with, without reference to an examination of the bankrupt, which is being had on the part of creditors.

[This was a proceeding in bankruptcy against Samuel M. Levy and Mark Levy. For hearing upon the practice of the register as to the manner of receiving and certifying objections, see Case No. 8,298.]

In this case, an examination of the bankrupts on the part of creditors was pending, and was adjourned to a day. The assignee applied for and obtained a summons to a witness to appear on a previous day and answer as to the bankrupt's property. On the return of the summons, the bankrupts also appeared, and objected to the examination of the witness, because no notice had been given to the bankrupts of the time and place of the examination, and because an examination of the bankrupts was pending, and the proceedings on it stood adjourned to a subsequent day, until which day no proceedings could, as the bankrupts claimed, take place except on consent of the bankrupts or reasonable notice to them. The register directed the examination of the witness to proceed and certified the ques-

[1] [Reported by Samuel Blatchford, Esq. 20 Leg. Int. 229, contains only a condensed report.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

tions, raised by the bankrupts' objections, to the judge.

By ISAIAH T. WILLIAMS, Register:

[2] [That in the proceedings in said cause before him, the following questions arose pertinent to said proceedings, and was stated by the counsel for the opposing party, to wit: Mr. Samuel Boardman, who appeared for the bankrupt, Mr. C. H. Smith appearing for the assignee.

[The assignee, Mr. Sedgwick, by Mr. C. H. Smith, his solicitor, applied to the register for a summons (form 48), directed to William Secor, requiring him to appear before the said register and answer concerning the bankrupt's property at a time therein specified. At the time so specified the said witness appeared pursuant to said summons, Mr. Smith and Mr. Boardman also appeared for the parties aforesaid. Whereupon Mr. Boardman objected to the examination of the witness, and filed his objections in the words following, to wit: "In re Samuel Levy and Mark Levy, Bankrupts. The petitioners herein by their solicitors, Benedict & Boardman, object to the examination of the witness, William Secor, at the present time, upon the following grounds: 1st. That no notice of the time and place of the proposed examination has been given to the petitioners or their solicitors. 2d. That an examination of the petitioners under section 26 of the act being now pending, and the proceedings on said examination before the register having been regularly adjourned to the 26th day of September, 1867, at 1 p. m., no examination of the bankrupts or witnesses can take place except upon such adjourned day without the consent of, or reasonable notice given to the bankrupts or their solicitors. 3d. That the examination of witnesses under section 26 of the act being a proceeding in the matter, the bankrupts or their solicitors are entitled to reasonable notice of the time and place of such examination so as to enable them to be present and to have an opportunity to cross-examine the witnesses produced. 4th. That to allow the examination of witnesses to proceed except upon the regular adjourned days or times agreed upon, or of which due notice has been given, would lead to confusion, and might and would result in great injustice to the petitioners. (Signed) Benedict & Boardman, Solicitors for Petitioners. September 20, 1867."

[After hearing the parties, the register decided to certify the points made by Mr. Boardman to the courts for decision, but did not consider it a proper course to adjourn the examination until the coming in of the decision, as he thought no harm could come to the bankrupt from proceeding, and was given to understand that a loss might ensue if the testimony were not at once taken. The examination proceeded accordingly. As to the objections made by Mr. Boardman, the register says he thinks that when put as questions to the court they amount to the following: First. When an assignee desires to examine a witness for the purpose of discovering property (an assignee can have no other object in examining a witness or a bankrupt, and probably would not be allowed to use his office to get testimony to defeat the bankrupt's application for a discharge), is it necessary to give notice to the bankrupt of the time of such examination? Second. When the creditors have commenced an examination of parties and witnesses before a register, and the further examination stands adjourned over to a future day, may the assignee, in the mean time, and before the adjourned day, come in and examine a witness, or must he wait until the adjourned day and then proceed? As to the first question, it is not without difficulty. On the one hand it would seem to be of no just concern to the bankrupt to oppose an assignee in finding and obtaining his assets, and clearly he cannot complain if the assignee does not require his aid. On the other hand, as the examination taken by an assignee on such an occasion must be returned to the court with the other papers in the case, and will comprise a part of the record in such case (see act, section 26 [14 Stat. 529]; also general order 7), it is clear that it may be read and referred to on an argument before the court by a creditor opposing the discharge of the bankrupt, and thus made testimony against the bankrupt, although he should have had no opportunity to cross-examine the witness. This would seem to be unjust; yet neither the act nor the general order in terms require a notice to be served upon the bankrupt or his solicitor, even in case the examination is by a creditor for the purpose of defeating the application for a discharge. The words "in like manner" in section 26, referring to the preceding words "upon reasonable notice," in the same section, refer to the witness and not to the bankrupt or his solicitors. It can hardly have been the intention of congress to allow a creditor to proceed and take testimony before a register for the purpose of defeating the bankrupt without giving notice and thus enable him to cross-examine the witness. It was probably left to the court to regulate the practice by an order, and has been overlooked by the court. It might be inconvenient for the assignee to give notice to the bankrupt or his solicitor in all cases; and in a case where he had reason to fear collusion between the witness whom he desired to examine, and the bankrupt, it might not be expedient to give such notice to the bankrupt. If he is at all times entitled to notice from the assignee, then it would be competent and perhaps just to adjourn the examination to suit the convenience or pretended convenience of the bankrupt or his solicitor, and thus, in case of collusion, the

_____

[2] [From 1 N. B. R. 107.]

whole purpose of the examination might be defeated. Judging from my own experience, I think the injury likely to be done to the bankrupt by the omission to give him notice of an examination by the assignee, and the loss of an opportunity to cross-examine the witness, would not be so great as that which would be likely to flow from an opposite course. In case testimony injurious to the bankrupt were so taken, it would be competent for the court on the trial to allow him to recall the witness for cross-examination. Besides, the register would be careful that the assignee's name should not be used by creditors for the purpose of getting in testimony clandestinely to defeat the bankrupt's discharge. As to the second question, it will be observed that the proceedings pending were proceedings by creditors; this is a different proceeding by the assignee. I don't see that one proceeding should be affected by the other.] [3]

BLATCHFORD, District Judge. It was not necessary to give notice to the bankrupts of the time and place of the examination of the witness on the summons applied for by the assignee. The examination of such witness was an independent proceeding, and could be proceeded with without reference to the examination on the part of the creditors. The clerk will certify this decision to the register Isaiah T. Williams, Esq.

[NOTE. This case was subsequently heard upon the right to examine one of the bankrupts as to property acquired since filing petition, and upon the right of his counsel to cross-examine him. Case No. 8,296. It was again heard upon the question as to whether attorney for creditors could act as counsel for assignee. Case No. 8,299. And, finally, upon whether or not a creditor who has not filed his claim may file objections to the bankrupt's discharge. Case No. 8,297.]

---

## Case No. 8,296.

### In re LEVY et al.

[1 Ben. 496; [1] Bankr. Reg. Supp. 30; 1 N. B. R. 136; 6 Int. Rev. Rec. 163.]

District Court, S. D. New York. Oct. 30, 1867.

EXAMINATION OF BANKRUPT—ISSUES OF LAW AND REGISTER'S CERTIFICATES.

1. Under section twenty-six of the bankruptcy act [of 1867 (14 Stat. 529)], and general order No. 10, a bankrupt is to be examined and cross-examined like any other witness.

2. The exclusion by a register of a question in an examination before him, which is objected to, is not raising an issue of law within section four of the bankruptcy act, nor does objecting to the question raise such an issue of law.

3. A register has no right to pass upon the competency, materiality, or relevancy of a question. [Followed in Re Bond, Case No. 1,618. Cited in Re Graves, 24 Fed. 552.]

4. The practice in taking depositions before a register is the established practice in examinations before an examiner in chancery.

5. When a register adjourns a question into court under section four of the act, it is not necessary to adjourn further proceedings in the matter until the question shall be decided by the judge. [Cited in Re Heller, Case No. 6,339; Re Blaisdell, Id. 1,488.]

6. As to the interpretation of the provision in section six of the act with reference to certificates —quere.

7. A certificate by a register stating a question objected to, and that he excluded the question, is not a "special case" under section six.

[This was a proceeding in bankruptcy against Samuel M. Levy and Mark Levy. It was formerly heard upon the certificate of the register as to his practice in receiving and certifying objections. Case No. 8,298. Again upon the question whether or not notice of time and place of examination of witnesses as to bankrupt's property should be given bankrupt. Case No. 8,295.]

In this case, on the examination of one of the bankrupts, the creditors and the assignee put the following question to him: "Have you acquired any property since you filed your petition, or since you were declared a bankrupt?" This question was objected to by the bankrupts, and the register sustained the objection, and excluded the question. Thereupon the creditors and the assignee excepted to the decision, and desired that it should be certified to the court for decision. The register stated his reason for excluding the question to be, that he is of opinion that, under the bankruptcy act, the assignee takes all the property acquired by a voluntary bankrupt up to the day on which the register signs the order, form No. 5, declaring and adjudging him to be a bankrupt.

When the creditors and the assignee had concluded the examination of the bankrupt, the counsel for the bankrupt proposed to cross-examine the bankrupt, and asked for an adjournment. The creditors and the assignee objected to such cross-examination, on the ground that the counsel for the bankrupt had no right to cross-examine him; that the right of the bankrupt was limited to explaining by affidavit, under general order No. 33, any answers given by him; that his attention might be called by his counsel to any answer given by him, and he might be asked if he had any explanation to make; that his petition and schedules were his direct examination, and his examination by creditors was a cross-examination; and that he was his own witness and not a witness called by the creditors. The reply on the part of the bankrupt to these views was, that the most proper and convenient mode of calling the bankrupt's attention to any erroneous statement he might have made during his examination was by questions put by his counsel in the way of cross-examination; that in this way he was afforded an opportunity of correcting or explaining statements made by him; that, under

---

[3] [From 1 N. B. R. 107.]
[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]